IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JDR INDUSTRIES, INC., | |
| Plaintiff, | 8:14-CV-284 |
| vs. | MEMORANDUM AND ORDER |
| JAMES L. VANCE, et al., | |
| Defendants. | |

The plaintiff, JDR Industries, is suing the defendants, Michael E. McDowell, James L. Vance, LaGrange Supply Co., and J.L. Vance, LLC for various claims pertaining to the defendants' sale of LaGrange welding rod. Currently before the Court is JDR's motion to dismiss a party defendant (filing 158), which will be granted, and its renewed motion for summary judgment (filing 159), which will be granted in part and denied in part.

## BACKGROUND

*(a) Factual History*[1]

The plaintiff, JDR Industries, is a Nebraska corporation that produces and sells welding rod under the name "LaGrange." JDR traces its ownership of the LaGrange mark through a chain of predecessors in interest beginning with LaGrange Equipment Company ("LEC"). LEC sold LaGrange welding rod from 1970 to 1985, when its creditor—Ralston Bank—took ownership of its assets. Filing 162-8 at 2; filing 162-11 at 2. Those assets, including the rights in the LaGrange name, passed to TGS Marketing, Inc., and ultimately

---

[1] JDR's renewed motion for summary judgment is, for the most part, premised on the same factual basis as described in the Court's previous Memorandum and Order. Therefore, the Court need only summarize those facts here. *See* filing 55 at 2-6.

to JDR. Filing 162-11 at 4. Thus, together with its predecessors, JDR has used the mark in connection with the sale of welding rod since at least 1970.

Defendant McDowell was a former employee of LEC. *See* filing 162-20 at 5. When LEC closed in 1985, he partnered with other LEC regional sales managers and continued to sell distributorships on their behalf—essentially continuing in his previous capacity, despite the company's closure. Filing 162-20 at 8-9. In or around 2007, McDowell began selling welding rod on his own, out of his garage, using the LaGrange mark. Filing 162-20 at 10. He continued in these sales under the business name "LaGrange Supply Co.," which he registered as a trade name with the Nebraska Secretary of State in July 1997, and renewed in 2007. *See*, filing 162-20 at 25; filing 163-9 at 1-5. At some point in 2014, McDowell formed defendant LaGrange Supply Co. (LG Supply), a Nebraska limited liability corporation. Filing 162-20 at 54. He then assigned his interest in the LaGrange Supply Co. trade name to his LLC. Filing 162-20 at 56.

In 2013, McDowell was contacted by defendant James Vance, who was—until his December 2013 termination—employed by JDR as a telemarketing salesperson. *See*, filing 162-20 at 32; filing 162-21 at 8. Vance and McDowell had a meeting and eventually reached an agreement regarding the sale of LaGrange welding rod. Pursuant to that agreement, McDowell purported to authorize Vance (and his LLC, defendant J.L. Vance, LLC) to sell, through telemarketing, welding rod branded as LaGrange and to use the LaGrange Supply Co. name. Filing 162-20 at 35; filing 162-21 at 120. In return, Vance agreed (among other things) to pay a percentage of his proceeds as a royalty and to be subject to certain quality control standards. Unlike McDowell, who had relied primarily upon people calling him, Vance

commenced telemarketing operations, including making sales calls to JDR's clients. *See* filing 162-20 at 49-51.

JDR's president avers that, within approximately 1 month following Vance's termination, JDR learned, from contacts with its own customers, that defendants and their "agents/licensees" (i.e., Vance) were directly contacting JDR's customers, including those customers Vance had previously serviced while employed with JDR. Filing 162-8 at 8. Since then, JDR has begun tracking instances of confusion by its customers and others, and JDR has documented numerous instances in which a customer has expressed confusion concerning defendants' use of the LaGrange name.

### *(b) Procedural History*

JDR filed suit in September 2014, alleging, among other claims, trademark infringement, unfair competition, and deceptive trade practices. At that time, McDowell and LG Supply were the only two named defendants. Soon thereafter, JDR moved for partial summary judgment, arguing that it had satisfied certain elements of its claims. *See* filing 34. Specifically, JDR argued that (1) it owns a valid and legally protectable trademark (i.e., the LaGrange mark), and (2) that McDowell and LG Supply used the mark in commerce without JDR's consent. Filing 34 at 1. The Court, in an August 4, 2015 Memorandum and Order (M&O), granted JDR's motion as to both elements. *See* filing 55. Accordingly, those issues—at least as they pertain to McDowell and LG Supply—are no longer in dispute.

Following the Court's M&O, JDR amended its complaint, adding as party defendants James L. Vance and J.L. Vance, LLC ("JLV"). *See* filing 63. It asserts the same claims against Vance and JLV as it does against McDowell and LG Supply—that is, trademark infringement, unfair competition, and deceptive trade practices. JDR now seeks summary

judgment against Vance and JLV "on the same issues and on the same grounds as previously entered against Edwin K. McDowell and [LG Supply]." Filing 159 at 1. It also seeks judgment as to each defendant on the remaining element of its claims: whether there is a likelihood of confusion between JDR's mark and the defendants' use of that mark. Filing 159 at 2.

It is also worth noting that both defendant entities (LG Supply and JLV) are in default, and that Vance, proceeding *pro se*, has not responded to JDR's present motion. *See*, filing 113; filing 130. Further, Edwin McDowell—the primary subject of JDR's suit—has died. *See* filing 109. Following his death, JDR substituted McDowell as a party defendant with his son, Michael McDowell, as the personal representative of his father's estate, and as trustee of the Edwin K. McDowell Revocable Trust. *See* filings 140-142. But the aforementioned trust has been terminated, so JDR now moves to dismiss Michael McDowell as a party defendant "in his capacity as trustee of said trust only." Filing 158. That motion will be granted. So, while the Court will refer to the actions of Edwin McDowell below, JDR's claims are actually against his son, Michael McDowell, in his capacity as personal representative of his father's estate.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant

does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The existence of a mere scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## ANALYSIS

JDR has sued each of the defendants for (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1); (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); and (3) violations of the Nebraska Uniform Deceptive Trade Practices Act ("NUDTPA"), Neb. Rev. Stat. § 87-301 *et seq*. *See* filing 142 at 15-18. JDR has also sued McDowell and LG Supply under Nebraska's Trademark Registration Act ("NTRA"), Neb. Rev. Stat. § 87-126 *et seq*., seeking cancellation of McDowell's state-registered trade name. Given the procedural complexities and piecemeal nature of this

case, the Court will—for clarity—address JDR's claims against the named defendants and their respective LLCs separately.

### 1. VANCE & JLV

JDR claims that Vance's and JLV's use of the LaGrange name in its sale of welding rod constitutes trademark infringement, unfair competition, and deceptive trade practices.

The elements of JDR's claims are essentially the same: to prevail on a claim of trademark infringement under 15 U.S.C. § 1114(1), a plaintiff must establish that (1) it owns a valid, protectable mark; (2) that defendants have used the mark in commerce without the plaintiff's consent; and (3) that there is a likelihood of confusion between the plaintiff's mark and the defendant's mark. 15 U.S.C. § 1114(1); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 389 (8th Cir. 2009); *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005). A claim of unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), has the same elements, except that registration of the mark is not required. 15 U.S.C. § 1125(a)(1); *Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005); *1-800 Contacts*, 414 F.3d at 406-07. And conduct causing a likelihood of confusion also constitutes a "deceptive trade practice" under the NUDTPA. *See* Neb. Rev. Stat. § 87-302(a)(2) and (3).

As noted above, JDR has, with respect to McDowell and LG Supply, already established that it owns a valid, protectable mark, and that McDowell and LG Supply used the mark in commerce without JDR's consent. Filing 55 at 8-17.[2] JDR argues that a similar grant of summary judgment is

---

[2] It is worth noting that Vance and JLV's use of the mark is directly tied to McDowell's. In other words, Vance did not sell LaGrange welding rod independent of McDowell. Rather,

- 6 -

warranted here "now that Vance and JLV have been added as parties[.]" Filing 162 at 28. The Court agrees.

### *(a) JDR owns a valid, protectable mark*

To prevail on its claims against Vance and JLV, JDR must demonstrate that it owns a valid, protectable mark. *B & B Hardware, Inc.*, 569 F.3d at 389. Ownership of a protectable mark is determined on the basis of priority of use in commerce; thus, the party claiming ownership must have been the first to actually use the mark in the sale of goods or services. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 930 (9th Cir. 2014). Here, as explained in the Court's prior M&O, the undisputed evidence shows that JDR has priority of use over the mark through an unbroken chain of use in commerce dating back to at least 1970. *See* filing 55 at 9-10. Neither Vance nor JLV has introduced evidence or arguments suggesting otherwise.

Nor is it disputed that JDR's mark is valid, i.e., protectable. In order for a mark to be protectable, it must be distinct. *Co-Rect Prods, Inc. v. Marvy! Adver. Photography, Inc.*, 780 F.2d 1324, 1329 (8th Cir. 1985). Distinctiveness comes in two forms: inherent and acquired. A mark is inherently distinctive if its intrinsic nature serves to identify a particular source. *See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 635 (6th Cir. 2002). A mark that is not inherently distinctive can acquire distinctiveness through attachment of secondary meaning. *Id.*

Here, the Court has already determined that the LaGrange mark is at least descriptive, and that it acquired secondary meaning before 1985. *See* filing 55 at 13. Again, Vance has not come forward with arguments or

---

McDowell purported to authorize Vance and his LLC to sell the product under the LaGrange mark. *See* filing 132-21 at 49-50.

evidence suggesting otherwise, and accordingly, JDR has satisfied this element of its claims.

### *(b) Vance & JLV used the mark in commerce*

Neither party contests the fact that Vance and JLV (and McDowell and LG Supply, for that matter) sold welding rod under the LaGrange name in commerce. Summary judgment is warranted on this element of JDR's claims.

### *(c) There is a likelihood of confusion*

The only remaining element with respect to JDR's claims for trademark infringement, unfair competition, and deceptive trade practices is whether there is a likelihood of confusion between JDR's mark and Vance's and JLV's use of that mark. The Eighth Circuit applies a six-factor test to determine whether there is a likelihood of confusion, no part of which is dispositive standing alone:

> (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to 'pass off' its goods as those of the trademark owner; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase.

*Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 (8th Cir. 2010).

But the Court need not independently evaluate the facts of this case under each of the six factors identified above. Indeed, it is uncontested that Vance and JLV used an identical mark in the sale of identical goods. Further, there is evidence in the record—to which neither Vance nor JLV has responded—of actual consumer confusion stemming from the defendants' conduct. To this end, several customers of JDR have submitted affidavits suggesting that Vance contacted them regarding the sale of LaGrange

welding rod. Based on Vance's representations, and his use of the LaGrange name, the customers believed they were speaking with a representative from JDR. *See*, filing 162-1; filing 162-2; filing 162-3; filing 162-4. Based on this testimony, and given the identical nature of the parties' marks and products, JDR is entitled to summary judgment on this element of its claims.

### 2. MCDOWELL & LG SUPPLY

JDR seeks summary judgment against McDowell and LG Supply on its claims for trademark infringement, unfair competition, and deceptive trade practices, and on its state law claim under the NTRA. *See* filing 159 at 2. Regarding the NTRA, JDR seeks an order directing Nebraska's Secretary of State to cancel McDowell's tradename (*i.e.*, "LaGrange Supply Co.") from the state's tradename registration. Filing 159 at 2. It relies on § 87-136(3)(b), which provides that the secretary shall cancel from the register, in whole or in part, "[a]ny registration concerning which a court of competent jurisdiction finds that . . . (b) The registrant is not the owner of the mark." And because neither McDowell nor LG Supply own the mark at issue, JDR urges the Court to cancel the tradename.

*(a) Infringement, Unfair Competition, and Deceptive Trade Practices*

JDR moves for summary judgment against McDowell and LG Supply on the remaining element of its claims: whether there is a likelihood of confusion between JDR's mark and McDowell's and LG Supply's use of that mark. For many of the reasons already discussed, JDR's request will be granted. To this end, McDowell and LG Supply used an identical mark to sell an identical product. And while JDR has presented less evidence of actual customer confusion stemming from McDowell and LG Supply, the evidence it has presented is completely undisputed. *See*, filing 162-1; filing 162-2; filing 162-3; filing 162-4. Thus, based on the evidence adduced, and the Court's

broader consideration of the six-factor test set forth above, JDR's motion for summary judgment on these grounds will be granted.

But that determination is not dispositive of JDR's claims against McDowell. Indeed, while McDowell does not dispute the remaining element of JDR's claims, he does assert affirmative defenses which, he claims, prohibit the entry of summary judgment. *See* filing 163. Specifically, McDowell argues that JDR's claims under the Lanham Act are barred by the equitable doctrine of laches, and that his state law claims are barred by the applicable 4-year statutes of limitations. Filing 163 at 8-9.[3]

Before addressing McDowell's arguments, one procedural point is worth noting. Because McDowell is opposing JDR's motion for summary judgment with affirmative defenses, he bears the burden of establishing by prima facie proof that, for example, the limitations period has expired on JDR's claims. *See Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995). In other words, McDowell must come forward with sufficient evidence, viewed in the light most favorable to him, to support the conclusion that JDR's claims are barred by the affirmative defenses on which McDowell relies. *Residential Funding Co. v. Terrace Mortg. Co.*, 850 F. Supp. 2d 961, 964 (D. Minn. 2012); *see Frankel v. ICD Holdings S.A.*, 930 F. Supp. 54, 64-65 (S.D.N.Y. 1996) (collecting cases).[4] The mere fact that McDowell has alleged

---

[3] To be clear: McDowell, not LG Supply, has raised affirmative defenses. As noted below, because JDR has satisfied the remaining element of its claims against LG Supply (which has not responded), JDR's motion for summary judgment against the LLC is granted.

[4] As explained in *Frankel*, this standard is consistent with *Celotex Corp. v. Catrett*, in which the Supreme Court interpreted Fed. R. Civ. P. 56(c) as mandating summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, *and on which the party will bear the burden of proof at trial*." 477 U.S. 317, 322 (emphasis added). Because McDowell bears the burden of proof

affirmative defenses in his answer is not enough to preclude JDR's motion for summary judgment.

### *(i) Laches*

McDowell argues that JDR is not entitled to summary judgment on its claims under the Lanham Act because such claims are barred by the doctrine of laches. Laches applies when a claimant inexcusably delays in asserting its claim and thereby unduly prejudices the party against whom the claim ultimately is asserted. *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 602 (8th Cir. 1999). It is a valid defense to claims for both monetary damages and injunctive relief, and courts can (and should) tailor its application to fit the facts and equities of each case. *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 989 (9th Cir. 2006). Thus, even if laches bars certain damages in this case, it may not bar, for example, prospective injunctive relief.

Here, McDowell argues that JDR slept on its rights, neglecting to take action against McDowell despite knowing of his business operations. *See* filing 163 at 12. In asserting this argument, McDowell references his continuous online web presence from 2006 to 2015, his registration of the trade name "LaGrange Supply Co." with the secretary of state, and his general marketing of the product "throughout the Midwest and Nebraska." Filing 163 at 12. He also provides testimony from Vance and Joseph Longo, both former employees of TGS and JDR, which suggests that James Braun, JDR's president, was aware that other individuals were selling "LaGrange" branded welding rods. *See*, filing 163 at 12; filing 163-11 at 2; filing 163-14 at

---

at trial on his affirmative defenses, he must adduce evidence, viewed in the light most favorable to him, that "would permit judgment for [him] on the basis of that defense." *Frankel*, 930 F. Supp. at 64-65.

3. Longo, for example, testified that while employed by JDR, he frequently contacted customers who informed him that they were obtaining LaGrange welding rod "at a fraction of the cost . . . from a company out of Omaha." Filing 163-14 at 3. "Whenever I encountered one of these situations," Longo stated, "I would advise James Braun that customers were obtaining LaGrange welding rod from a different source located in Omaha, Nebraska." Filing 163-14 at 3. Braun's response, according to Longo, was that "he 'knew about that company' but 'it wasn't LaGrange welding rod.'" Filing 163-14 at 3. Taken together, this evidence purportedly establishes that JDR knew, or should have known, that McDowell was selling LaGrange welding rod since at least the early-to-mid 2000s.

JDR disputes whether it was aware of, much less acquiesced in, McDowell's business practices. It further contends that Vance's affidavit should be "entirely disregarded" based on purported inconsistencies elsewhere in the record, and that Longo's testimony is "extremely suspect," implying that its former employee may be motivated by something other than the truth. Filing 164 at 17-19.

But JDR's arguments deal largely with witness credibility, which the Court need not, and will not, weigh at this stage of the proceedings. *See Torgerson*, 643 F.3d at 1042. Thus, viewing the facts in the light most favorable to the nonmoving party, the Court concludes that material issues of fact remain as to when JDR knew of McDowell's conduct, and how long it acquiesced, if at all, in such behavior. To this end, as alluded to above, it appears that McDowell used the LaGrange mark for over 20 years in the sale of welding rod. The evidence also shows that he registered the tradename "LaGrange Supply Co." in 1997, which he renewed in 2007. And there is at least some testimony suggesting that JDR's president, James Braun, knew or

should have known that McDowell was carrying on this business since the early-to-mid 2000s. As such, JDR's motion for summary judgment as to McDowell will be denied.

### *(ii) Statute of Limitations*

McDowell further contends that JDR's state law claims under the NUDTPA and NTRA are barred by the applicable limitations periods. *See* filing 163 at 8-9. Under the NUDTPA, civil actions may be brought "only within four years from the date of the purchase of goods or services." Neb. Rev. Stat. § 87-303.10. And JDR's claim under the NTRA is subject to Neb. Rev. Stat. § 25-212, which also provides a 4-year limitation period.

As noted in the prior M&O, it is not entirely clear from McDowell's brief how, for example, the NUDTPA 4-year limitation period applies to the present case. *See* filing 55 at 17. And McDowell has not, as the Court previously requested, further developed these arguments for purposes of the present motion. But McDowell has provided evidence (as summarized above) that JDR knew of, and acquiesced in, his business conduct dating back to the early-to-mid 2000s. *See*, filing 163-14 at 2-3; filing 163-11 at 2-3. He has also provided his 1997 registration of the trade name "LaGrange Supply Co.," which he renewed with the secretary of state in 2007. *See* filing 163-9 at 1-5. Against this backdrop, it cannot be said, as JDR suggests, that McDowell has failed to produce evidence regarding an essential element of his defense. And while it is true that McDowell's defense may ultimately fail, that determination—at least on the evidence adduced—cannot be made at this stage the proceeding. Accordingly, McDowell may pursue his statute of limitations defense as to McDowell's claims under the NUDTPA and NTRA.

### 3. Permanent Injunction

Finally, JDR seeks a permanent injunction against all defendants "prohibiting their use of Plaintiff's trademark and directing Defendants' transfer of infringing domain names . . . as well as [the] phone number used in their infringement to Plaintiff." Filing 159 at 2. While none of the defendants have opposed JDR's request, the Court is not inclined to enter the proposed injunction at this stage of the proceedings. Indeed, JDR has remaining claims against each of the four named defendants, and thus the viability of its request, and the potential parameters thereof, should be determined upon entry of final judgment.

### CONCLUSION

In sum, JDR's motion for summary judgment against LG Supply, Vance, and JLV on its claims for trademark infringement, unfair competition, and deceptive trade practices is granted. Further, with respect to McDowell, the Court finds that there is a likelihood of confusion between JDR's mark and McDowell's use thereof, and accordingly, that JDR has established the remaining element of its claims. However, McDowell may present his affirmative defenses, as set forth above, to these claims. Accordingly, JDR's motion for summary judgment as to McDowell is denied.

IT IS ORDERED:

1. JDR's motion to dismiss Michael E. McDowell in his capacity as trustee of the Edwin K. McDowell Revocable Trust (filing 158) is granted.

2. JDR's motion for summary judgment (filing 159) is granted in part and denied in part. Specifically,

   a. JDR's motion for summary judgment against James L. Vance is granted.

   b. JDR's motion for summary judgment against JLV is granted.

   c. JDR's motion for summary judgment against LG Supply is granted.

   d. JDR's motion for summary judgment against McDowell is denied, to the extent that McDowell may pursue his affirmative defenses.

3. The magistrate judge shall progress this matter to final disposition at the earliest date possible.

Dated this 18th day of April, 2017.

BY THE COURT:

John M. Gerrard
United States District Judge